UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOEL EDWARD EBEL,

        Plaintiff,                CIVIL ACTION NO. 16-cv-11995

       v.                      DISTRICT JUDGE DENISE PAGE HOOD

COMMISSIONER OF          MAGISTRATE JUDGE MONA K. MAJZOUB
SOCIAL SECURITY,

        Defendant.
_____/

**REPORT AND RECOMMENDATION**

    Plaintiff Joel Edward Ebel seeks judicial review of Defendant Commissioner of Social Security's determination that he is not entitled to social security benefits for his mental and physical impairments under 42 U.S.C. § 405(g). (Docket no. 1.) Before the Court are Plaintiff's Motion for Summary Judgment (docket no. 13) and Defendant's Motion for Summary Judgment (docket no. 16). Plaintiff filed a Reply (docket no. 17) to Defendant's Motion. The motions have been referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (Docket no. 2.) The Court has reviewed the pleadings, dispenses with a hearing pursuant to Eastern District of Michigan Local Rule 7.1(f)(2), and issues this Report and Recommendation.

**I.    RECOMMENDATION**

    For the reasons that follow, it is recommended that Plaintiff's Motion for Summary Judgment (docket no. 13) be **DENIED** and Defendant's Motion for Summary Judgment (docket no. 16) be **GRANTED**.

## II.   PROCEDURAL HISTORY

Plaintiff protectively filed applications for a period of disability, disability insurance benefits, and supplemental security income on September 13, 2012, alleging that he has been disabled since December 8, 2011, due to "back surgery on 5-17-12, broke neck, neck surgery on 9-04-12, [and] special education since 3 years old." (TR 46, 199–215.) Plaintiff was required to undergo the back and neck surgeries following a serious automobile accident in December 2011. (TR 20.) The Social Security Administration denied Plaintiff's claims on November 21, 2012, and Plaintiff requested a *de novo* hearing. (TR 101, 106, 130.) On November 7, 2014, Plaintiff appeared with a representative and testified at the hearing before Administrative Law Judge (ALJ) Dores D. McDonnell, Sr. (TR 34–45.) In a January 15, 2015 decision, the ALJ found that Plaintiff was not entitled to benefits because he was capable of performing a significant number of jobs in the national economy. (TR 27–28.) The Appeals Council declined to review the ALJ's decision (TR 1–4), and Plaintiff commenced this action for judicial review. The parties then filed cross motions for summary judgment, which are currently pending before the Court.

## III.   HEARING TESTIMONY AND MEDICAL EVIDENCE

Plaintiff (docket no. 13 at 10–14) and the ALJ (TR 16–17, 19–26) each set out a detailed, factual summary of Plaintiff's medical record and the hearing testimony. Defendant also provides a brief summary, and adopts the ALJ's recitation of the facts. (Docket no. 16 at 5–7.) Having conducted an independent review of Plaintiff's medical record and the hearing transcript, the undersigned finds that there are no material inconsistencies between Plaintiff's and the ALJ's recitations of the record. Therefore, the undersigned will incorporate the factual recitations by

2

reference. Additionally, the undersigned will include comments and citations to the record as necessary throughout this Report and Recommendation.

## IV. ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2014; that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of December 8, 2011; and that Plaintiff suffered from the following severe impairments: degenerative disc disease status-post cervical and lumbar spine surgery. (TR 16.) The ALJ also found that Plaintiff's obesity, learning disability, depression, anxiety and alcohol use were not severe impairments. (TR 16–17.) Next, the ALJ found that Plaintiff's impairments did not meet or medically equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (TR 18.) The ALJ then found that Plaintiff had the following RFC:

> [T]he claimant has the residual functional capacity to perform a wide range of light work as defined in 20 CFR 404.1567(b) and 416.967(b) in that he can lift and/or carry 20 pounds occasionally, 10 pounds frequently and stand, walk and sit 6 hours in an 8-hour workday. He is unlimited in his ability to push and pull with hand or foot controls; and, has no manipulative, visual, communicative, postural or environmental limitations except for avoidance of ropes, ladders, scaffolds and unprotected heights. The claimant can hear, understand, learn, remember and carry out simple routine work instructions, make basic work decisions, adapt to a work setting, respond appropriately to supervision and can interact appropriately with co-workers, supervisors and the general public. He can sustain attention and concentration sufficien[tly] to complete an 8-hour workday and five-day workweek. Moreover, the claimant can use public transportation, drive his personal vehicle, and be aware of common hazards in the workplace and take appropriate precautions.

(TR 18–19.) Subsequently, in reliance on Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2, the ALJ determined that Plaintiff was capable of performing a significant number of jobs in the national economy. (TR 27.) Therefore, the ALJ found that Plaintiff was

not disabled under the Social Security Act at any time from December 8, 2011, through the date of the ALJ's decision. (TR 27.)

## V. LAW AND ANALYSIS

### A. Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions. Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528. It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc)

(noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts").

### B. Framework for Social Security Determinations

Plaintiff's Social Security disability determination was made in accordance with a five-step sequential analysis. In the first four steps, Plaintiff was required to show that:

(1) Plaintiff was not presently engaged in substantial gainful employment; and

(2) Plaintiff suffered from a severe impairment; and

(3) the impairment met or was medically equal to a "listed impairment;" or

(4) Plaintiff did not have the residual functional capacity (RFC) to perform relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(f). If Plaintiff's impairments prevented Plaintiff from doing past work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education, and past work experience to determine if Plaintiff could perform other work. If not, Plaintiff would be deemed disabled. *See id.* at § 404.1520(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health and Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'" *Id.* (citations omitted).

### C. Analysis

5

The Social Security Act authorizes "two types of remand: (1) a post judgment remand in conjunction with a decision affirming, modifying, or reversing a decision of the [Commissioner] (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the [Commissioner] (a sentence-six remand)." *Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994) (citing 42 U.S.C. § 405(g)). Under a sentence-four remand, the Court has the authority to "enter upon the pleadings and transcript of the record, a judgment affirming, denying, or reversing the decision of the [Commissioner], with or without remanding the cause for a hearing. 42 U.S.C. § 405(g). Where there is insufficient support for the ALJ's findings, "the appropriate remedy is reversal and a sentence-four remand for further consideration." *Morgan v. Astrue*, 10-207, 2011 WL 2292305, at *8 (E.D. Ky. June 8, 2011) (citing *Faucher*, 17 F.3d at 174).

Plaintiff asserts that this matter should be reversed and remanded under sentence four for an award of benefits, or in the alternative remanded for a *de novo* administrative hearing, because, Plaintiff argues, the ALJ did not properly evaluate the medical opinion evidence, and because the ALJ's RFC assessment is not based on any medical opinions, but is instead "based on the [ALJ's] own assessment of what Plaintiff's work limitations should be." (Docket no. 13 at 17–33.)

### 1. The Medical Opinion Evidence

Plaintiff takes issue with the ALJ's treatment of the opinions of Victor Hayes, M.D., an orthopedic surgeon who performed Plaintiff's back and neck surgeries and treated Plaintiff following his accident in 2011 through October 2014; Robert Martinez, M.D., a neurologist who examined Plaintiff in August 2013; and Dr. Eniola Owi, M.D., an internist/orthopedic doctor

6

who performed a consultative examination at the request of the ALJ. The undersigned will address Plaintiff's arguments and the ALJ's assessment concerning each doctor's opinion in turn.

### a. Dr. Victor Hayes

It is undisputed that Dr. Hayes is a treating physician and that the opinions of treating physicians are generally accorded substantial deference. In fact, the ALJ must give a treating physician's opinion complete deference if it is supported by clinical and laboratory diagnostic evidence and it is not inconsistent with the other substantial evidence in the record. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). When an ALJ determines that a treating source's medical opinion is not controlling, he must determine how much weight to assign to that opinion in light of several factors: (1) length of the treatment relationship and the frequency of examination; (2) nature and extent of the treatment relationship; (3) supportability of the opinion; (4) consistency of the opinion with the record as a whole; (5) specialization of the treating source; and (6) other factors. 20 C.F.R. §§ 404.1527(c)(2)–(6), 416.927(c)(2)–(6).

There is no *per se* rule that requires an articulation of each of the six regulatory factors listed in 20 C.F.R. §§ 404.1527(c)(2)–(6), 416.927(c)(2)–(6). *Norris v. Comm'r of Soc. Sec.*, No. 11-CV-11974, 2012 WL 3584664, at *5 (E.D. Mich. Aug. 20, 2012) (citing *Tilley v. Comm'r of Soc. Sec.*, 394 F. App'x 216, 222 (6th Cir. 2010)). An ALJ's failure to discuss the requisite factors may constitute harmless error (1) if "a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it;" (2) "if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion;" or (3) "where the Commissioner has met the goal of [§ 1527(c)]—the provision of the procedural safeguard of reasons—even though she has not complied with the terms of the regulation." *Nelson v. Comm'r*

*of Soc. Sec.*, 195 F. App'x 462, 470 (6th Cir. 2006) (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004)).

The Commissioner requires its ALJs to "always give good reasons in [their] notice of determination or decision for the weight [they] give [a] treating source's opinion." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Those good reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Wilson*, 378 F.3d at 544 (quoting SSR 96-2p, 1996 WL 374188, at *5 (1996)). The district court should not hesitate to remand when the Commissioner has failed to identify the weight assigned to a treating physician's opinion and provide good reasons for that weight. *See Cole v. Astrue*, 661 F.3d 931, 939 (6th Cir. 2011) ("This Court has made clear that '[w]e do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician's opinion and we will continue remanding when we encounter opinions from ALJ's that do not comprehensively set forth the reasons for the weight assigned to a treating physician's opinion.") (citing *Hensley v. Astrue*, 573 F.3d 263, 267 (6th Cir. 2009)).

The ALJ discussed Dr. Hayes's opinion as follows:

> I also give little weight to the opinion of Dr. Hayes that the claimant could perform less than sedentary work (Exhibit 13F). While Dr. Hayes is a treating source and [has] expertise, after a careful review of the medical evidence, his opinion is not supported by his own clinical/physical findings or with the other medical evidence of record such as those of Dr. Martinez (Exhibit 10F). In addition, with regard to Dr. Hayes['s] deposition in October 2014, despite acknowledging all the negative clinical/physical findings set forth in his treatment records, he still opined the claimant was unable to work, not even sedentary, due to his complaints of pain. Yet, I note that he admitted that he did not see the claimant every month and, in fact, last treated the claimant in May 2014. Moreover, there are no monthly drug tests reported. Most significant, the claimant testified at the hearing that he did not take pain medications every day, only occasionally, and reported activities such as driving and spending time on

> the computer. As noted above, the doctor's opinion is inconsistent with his reported clinical findings and is accordingly not persuasive.

(TR 23–24.) Plaintiff argues that the ALJ erred by "disregarding" Dr. Hayes's "well-supported opinion." (Docket no. 13 at 22.)

As is clear from the above-quoted portion of the ALJ's opinion, the ALJ concluded that Dr. Hayes's opinion should not be afforded complete deference because it was not consistent with Dr. Hayes's own clinical and medical findings, and then the ALJ discounted Dr. Hayes's opinion based on its lack of supportability, as well as the lack of frequency with which Dr. Hayes saw Plaintiff. Plaintiff disputes the ALJ's conclusion, and in support of his position, Plaintiff quotes from a deposition given by Dr. Hayes on October 15, 2014, in which Dr. Hayes testified:

> [W]hen I do these exams on people, that's one particular instance in time. And people like Joel who have had trauma to their spine and have had big operations will have good days and their bad days. So they'll have times when they just can't stand straight because of the back symptoms, and then they'll have times when they feel fine.
>
> The other thing is that he's still on narcotic medication. So like if someone took narcotics and then came to my office because the narcotics are covering up their symptoms, then they may present differently. So that's two aspects where my exam may not really reflect the long-term day-to-day in and out physical exam findings in this patient. And I haven't seen him that often because I haven't had to really . . . .

(TR 976–77.)

As is clear from this testimony, Dr. Hayes acknowledges the gap between his opinions concerning Plaintiff's functional limitations and the medical evidence in Plaintiff's treatment history. As the ALJ found, it appears that Dr. Hayes's opinion concerning Plaintiff's functional limitations was based largely on Plaintiff's reported pain symptoms, which Dr. Hayes himself found were alleviated by medication. (TR 977 (noting that the pain medicine "clinically [is] helping reduce his pain so he can be more functional").) Plaintiff reported no side effects from

this medication (TR 20), and furthermore Plaintiff testified that he only takes the medication during pain "flare ups." (TR 39–40.) Moreover, the ALJ found Plaintiff's complaints of pain to be not entirely credible, partially in light of Plaintiff's "reported activities of daily living" which include a full range of activities such as his ability to take care of himself and reside independently, shop, and drive." (TR 26.)

After concluding that Dr. Hayes's opinion should not be controlling, the ALJ properly weighed several of the factors in 20 C.F.R. §§ 404.1527(c)(2)–(6) and 416.927(c)(2)–(6) and assigned little weight to Dr. Hayes's opinion. The ALJ acknowledged Dr. Hayes's expertise and the fact that he was a treating physician, but then discounted Dr. Hayes's opinion based on its lack of supportability, the fact that the opinion was based on Plaintiff's subjective complaints which the ALJ found to not be entirely credible, and because Dr. Hayes did not see Plaintiff on a monthly basis and had not seen Plaintiff in the six months preceding the hearing. (TR 24.)

Plaintiff argues that the ALJ only focused on the findings of Dr. Hayes that placed Plaintiff in a "capable light," in violation of *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235 (6th Cir. 2002). However, this case is distinguishable from *Howard*, where the ALJ failed to consider entire diagnoses when formulating the plaintiff's RFC, including "major depressive disorder[,] . . . severe [without] psychotic effects [and] panic disorder [without] agoraphobia," and where it appeared the ALJ "only considered part" of a report concerning the plaintiff's mental status. *Id.* at 240. Here, the ALJ clearly discussed the entirety of Dr. Hayes's records, including Dr. Hayes's opinion that Plaintiff "never [be] the same," that Plaintiff would always experience "some limitation of motion" due to the nature of his surgeries, and that Plaintiff was "still symptomatic." (TR 22–23.) Finally, the ALJ directly quoted Dr. Hayes's opinion that "'if the claimant went back to any job where he could not sit or stand for every ten minutes or so, he

10

would have trouble . . . even sedentary work would be tough because even like a telephone job, he must be able to sit, stand every 10 to 15 minutes, and any job where there would be repetitive lifting more than 10 or 15 pounds would definitely put him at risk of problems.'" (TR 22 (quoting TR 972).) The ALJ in this case clearly did not overlook or fail to consider any part of Dr. Hayes's opinion or medical findings.

Plaintiff further argues that the ALJ erred in writing that Dr. Hayes's findings were inconsistent with the medical records from Dr. Martinez, Plaintiff's examining neurologist. (Docket no. 13 at 24.) Plaintiff then lists some of Dr. Martinez's findings/opinions:

> He appeared to be in pain. The patient had a very slow, cautious, antalgic gait. He walked with a cane. He had difficulty walking, toe walking, and tandem walking due to his pain. . . . On examination of the cervical spine, he had a large anterior scar being approximately four inches. It was well healed. Posteriorly, the patient had tenderness, swelling, hypertonicity, and marked nodular muscle spasm in the trapezius muscle mass areas and the levator scapulae, nodules being 6 cm in size. . . . . In the lumbar spine, the patient had two scars. They were well healed. There was no evidence of infection. He had tenderness, swelling, hypertonicity, and nodular muscle spasm, nodules being 6 cm in size.

(Docket no. 13 at 24 (citing TR 943–44).) Dr. Hayes found that Plaintiff had a normal gait, and that Plaintiff had only "mild" tenderness and no swelling in the lumbosacral spine (TR 951), which findings actually do appear to be at odds with those of Dr. Martinez.

In sum, The ALJ properly discounted Dr. Hayes's opinion, and provided good reasons for doing so. Plaintiff's argument for reversal or remand on this basis should be rejected.

    b.  *Dr. Eniola Owi*

Plaintiff next argues that the ALJ did not "properly consider" the opinion of Dr. Eniola Owi, an internist/orthopedic doctor who performed a one-time consultative examination at the request of the ALJ. (Docket no. 13 at 27–29.) The ALJ discussed Dr. Owi's opinion as follows:

> As for the opinion evidence, Dr. Owi offered a medical source statement restricting the claimant to less than sedentary work. The doctor's opinion appears

11

> to rest at least [in] part on an assessment of an impairment(s) for which the claimant received no treatment from that doctor. In fact, his clinical/physical findings are inconsistent with the claimant's treating specialist and therefore afforded little weight (Exhibits 9F and 11F).

(TR 23.)

Plaintiff argues that the ALJ's reasoning is "either irrational logic or a situation where the ALJ did not like the opinions of his examiner and sought ineffective reasons to ignore them." (Docket no. 13 at 28.) Plaintiff further argues that "[i]t is ironic that the ALJ is citing to Dr. Hayes' records after he had just disregarded Dr. Hayes' opinions and medical records . . . ." (*Id.*)

As Defendant points out, Dr. Owi's opinion is not entitled to any deference because Dr. Owi is not a treating source, and "the SSA requires ALJs to give reasons for [discounting the opinions of] only *treating* sources." *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007) (emphasis in original). In other words, while it is true that the ALJ asked for the consultative exam, the ALJ was not bound to accept the findings of the examiner. Moreover, the undersigned notes that the ALJ did list two reasons for discounting the opinion: the fact that Dr. Owi only saw Plaintiff once, for the consultative examination, and because Dr. Owi's opinion was not well-supported. Elsewhere in his decision, the ALJ noted, for example, that Dr. Owi found Plaintiff could lift up to 20 pounds frequently (TR 21), whereas Dr. Hayes found that Plaintiff could not lift more than 15 (TR 996). Dr. Owi also found that Plaintiff could sit for up to four hours in an eight-hour work day (TR 934), while Dr. Hayes opined that Plaintiff could not sit for more than two (TR 996).

In sum, the undersigned finds that the ALJ's assessment of Dr. Owi's opinion does not constitute reversible error. Plaintiff's Motion should be denied in this regard.

      *c.*    *Dr. Robert Martinez*

Plaintiff next argues that "[t]he ALJ failed to properly consider the opinion of Plaintiff's treating board certified neurologist that Plaintiff is 100% disabled." (Docket no. 13 at 29.) Concerning Dr. Martinez's opinion, the ALJ wrote:

> I give some weight to certain aspects of Dr. Martinez' opinion and others little weight. Specifically, . . . his opinion that the claimant can lift 20 pounds from a bent position and 10 pounds repetitively, I give great weight as it is consistent with the clinical findings in his report. However, his opinion that the claimant is 100% permanently, totally disabled, unable to work, function or compete in a competitive job environment for the rest of his life, is inconsistent with his clinical and diagnostic findings. For example, Dr. Martinez reported that the claimant'[s] muscle tone was normal and he had 5/5 strength in all extremities with normal sensory and no atrophy or fasciculation (Exhibit 10F). He also recited normal Tinel's, Adson's and "no evidence of complex regional pain syndrome." Further [Dr. Martinez][1] restricted the claimant to lifting 20 pounds, which would be consistent with a light residual functional capacity. I find it unclear as to how he could deduce the claimant was totally disabled when the subjective complaints were not supported by the medically acceptable clinical/physical tests, and, the assessment was refuted by other medical evidence of record (Exhibit 11F).

(TR 23.)

The ALJ properly discounted the portion of Dr. Martinez's opinion in which Dr. Martinez determined that Plaintiff was "100% permanently, totally disabled, unable to work, function, or compete in a competitive job environment for the rest of [Plaintiff's] life" (TR 947), as the ultimate issue of disability is reserved to the Commissioner, not a treating or examining physician. *Kidd v. Comm'r*, 283 F. App'x 336, 341 (6th Cir. 2008).

The only other error Plaintiff alleges with the ALJ's assessment of Dr. Martinez's opinion is that the ALJ "failed to report that Dr. Martinez also found: very slow, cautious, antalgic gait with need for a cane; difficult heel walking, toe walking, and tandem walking due to his pain; cervical spine tenderness, swelling, hypertonicity, and marked nodular muscle spasm in

---

[1] The ALJ's decision erroneously states that Dr. Hayes "restricted the claimant to lifting 20 pounds." (TR 23.) However, it is clear from the context provided by the rest of the paragraph that the ALJ intended to refer to Dr. Martinez.

the trapezius muscle mass areas and the levator scapulae with decreased range of motion; lumbar spine tenderness, swelling, hypertonicity, and nodular muscle spasm with decreased range of motion; and positive straight leg raising test bilaterally to 54 [degrees]." (Docket no. 13 at 30.) Plaintiff is simply incorrect on this point, as the ALJ specifically mentioned most, if not all, of these findings by Dr. Martinez. (*See* TR 20–21.)

In sum, the undersigned finds no error with the ALJ's assessment of Dr. Martinez's opinion. Plaintiff's Motion should be denied in this regard.

2.      *The ALJ's formulation of Plaintiff's RFC*

Plaintiff also argues that the ALJ's formulation of Plaintiff's RFC "was not based on any assessments by physicians in the record, but instead was based on the [ALJ's] own assessment of what Plaintiff's work limitations should be." (Docket no. 13 at 17.)

Plaintiff's argument in this regard is premised largely on his position that the ALJ improperly discounted the medical opinion evidence of Dr. Hayes, Dr. Martinez, and Dr. Owi. As discussed above, however, the undersigned has concluded that the ALJ's conclusions regarding the medical opinion evidence is not improper.

Moreover, the ALJ *did* expressly rely on some medical opinion evidence. The ALJ gave great weight to Dr. Martinez's opinion that Plaintiff can "lift 20 pounds from a bent position and 10 pounds repetitively." (TR 23; 946.) The ALJ also gave "some weight to certain aspects" of the opinion of Nicolas Bancks, M.D., the state agency medical consultant. (TR 24.) Dr. Bancks found that Plaintiff could occasionally climb ramps/stairs, ladders/ropes/scaffolds, and should "avoid even moderate exposure" to hazards such as heights. (TR 93–94.) The ALJ restricted Plaintiff further, finding that Plaintiff should totally avoid "ropes, ladders, scaffolds and unprotected heights." (TR 19.) While Dr. Bancks opined that Plaintiff should be limited to

sedentary work, the ALJ found that Plaintiff was capable of light work, noting that "the evidence received at the hearing level reveals some improvement in the claimant's condition." (TR 24.) Finally, as Defendant points out, the ALJ also relied on "significant non-opinion evidence," in particular Plaintiff's wide range of activities of daily living. (TR 25–26.) The ALJ concluded his opinion by explaining that "the claimant has not presented convincing substantial evidence that could reasonably prevent him from performing work activity within the parameters of the residual functional capacity as described. . . . Unfortunately, the medical evidence does not realistically support a conclusion of disability." (TR 26.)

In sum, it is clear that the ALJ based his formulation of Plaintiff's RFC partially on Dr. Martinez's opinion that Plaintiff can lift up to 20 pounds, partially on Dr. Bancks's findings concerning Plaintiff's other functional limitations, and partially on the fact that no credible evidence suggested that Plaintiff is not capable of light work. The ALJ discussed the medical and opinion evidence at length, and provided good reasons for rejecting the opinion of Plaintiff's treating physician. The undersigned finds that the ALJ's formulation of Plaintiff's RFC is supported by substantial evidence and should not be disturbed.

## VI. CONCLUSION

For the reasons stated herein, the Court should **DENY** Plaintiff's Motion for Summary Judgment (docket no. 13) and **GRANT** Defendant's Motion for Summary Judgment (docket no. 16).

### REVIEW OF REPORT AND RECOMMENDATION

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections

constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: July 24, 2017                    s/ Mona K. Majzoub
                                        MONA K. MAJZOUB
                                        UNITED STATES MAGISTRATE JUDGE

## PROOF OF SERVICE

I hereby certify that a copy of this Report and Recommendation was served upon counsel of record on this date.

Dated: July 24, 2017                    s/ Lisa C. Bartlett
                                        Case Manager